No. 1,574.

THE SALEM-BEDFORD STONE COMPANY *v.* O'BRIEN.

NEGLIGENCE.—*Defined.—Duty to Third Person.*—Actionable negligence consists in the breach of some duty owing from one person to another, by reason of which such person was injured. A duty owed to a third person is not sufficient to enable the injured person to recover.

SAME.—*Faculties Must be Used.—Contributory Negligence.*—A person must exercise his own faculties so as to avoid danger, if he can reasonably avoid it; and the failure to do so, if it contributes proximately to the injury, will prevent the injured person recovering damages for his injuries.

SAME.—*Elements of Contributory Negligence.*—The two essential elements of contributory negligence are want of ordinary care by the plaintiff and a causal connection between such want of care and the injury.

SAME.—*Ordinary Care Defined.*—Ordinary care is that degree of care and foresight which a discreet and cautious individual would, or ought to, use if the whole risk and loss were to be his own exclusively.

From the Lawrence Circuit Court.

*W. H. Martin,* for appellant.

*M. F. Dunn,* for appellee.

REINHARD, J.—Appellee sued the appellant and recovered damages in the sum of $3,000 for a personal injury received while in the employment of the appellant.

The complaint is in two paragraphs, to each of which a demurrer was overruled.

The jury answered certain interrogatories, and the appellant moved for a judgment upon these notwithstanding the general verdict, which motion was overruled, as was also the appellant's motion for a new trial.

Without entering upon a discussion of the questions arising from the ruling of the court upon the demurrer and the motion for a judgment notwithstanding the ver-

dict, we deem it sufficient to say that the court committed no error in these rulings.

We regard each of the paragraphs of the complaint as sufficient, and the answers to interrogatories in harmony with the general verdict.

The serious question in the case is whether there is sufficient evidence to support the verdict of the jury. The evidence shows that the appellant is a corporation operating a stone quarry or quarries, and, at the time of appellee's injury, was engaged in the erection of a stone saw mill, with its machinery, saws, planes and "travelers" in the vicinity of Bedford. The mill was not yet so far completed that any work could be done with it, and those employed at work and labor about the mill were engaged in the erection and construction of the mill and "travelers," and in the placing of the machinery. Among the machinery in process of erection and completion was a certain "traveler," or movable derrick, which was intended to be operated on an elevated road or track from fifteen to eighteen feet or more above the ground, and which moved back and forth on iron rails. Over the machinery of this traveler was a "house" or "cab," and immediately beneath this, resting upon the truck of the traveler, there were certain timbers and screws denominated "chords" and "trusses," which served to support and strengthen the house or cab.

At the end of the traveler, just below the sides of the truck upon which the chords and trusses rested, there was a rod or shaft, to which were attached certain cogs or cogwheels, by means of which the power in the cab was transmitted to the wheels, which caused the traveler to move.

At the time of the accident there was no steam in the engine in the cab. The traveler was not complete, but was easily moved on the iron tramway by means of the

wheels, a gust of wind being sufficient to start it. To aid in the erection and construction of the mill and traveler, the appellant employed one Mathias H. Pearson as superintendent, who was in full charge of said work. One Elijah Roberts was also at work in the cab or house subject to the orders of said Pearson. Some twenty-two days before the accident, the appellee was employed by said Pearson to work about said plant as an ordinary laborer, at the price of $1.25 per day, at such work as he was required to do. For some five or six days prior to the accident, the appellee had been at work on the traveler, and on the day of the accident had been sent to work beneath the cab of the traveler, and between the chords thereof, as he says, in the erection of a scaffold. While thus at work he had occasion, as he testified, to go down to the ground for a piece of timber to put into said scaffold. He passed from beneath the cab between the chords with a view to stepping down from the truck to the tramway, and walking from there to the east side of the traveler, where there was a ladder standing, by means of which he intended to descend to the ground. While in the act of passing from beneath the cab down upon the track or tramway, he stopped under the cab, in the vacant space between said chords, with one of his feet resting in the cogwheels of said shaft, "for two or three minutes," as appellee testified, and remained in this position until, a sudden storm or squall having arisen, a gust of wind moved the traveler, which caused the cogwheels to revolve and catch the appellee's foot between them, and inflicted the injury of which he complains.

There is, also, evidence tending to prove that the wheels of the traveler were not chocked or stayed in any manner, and that if they had been the traveler would not have been moved by the wind and the accident

would not have happened.    We have given the evidence in the light most favorable to the appellee, as he is entitled to have it construed.

The following cut of the traveler may serve to outline the situation and help to illustrate the main features of the evidence:

F F F—Wheels of truck.
G G—Shaft or rod to which cogs are attached.
H H—Cog wheels.
*—Place of accident.

A A—Traveler cab or house.
B B—Chords and trusses supporting cab.
C C—Truck supporting traveler.
D D—Tramway and iron track.
E E—Open space beneath cab where O'Brien was at work.

EAST

The Salem-Bedford Stone Company *v.* O'Brien.

To render the appellant liable, it must appear from the evidence:

*First.* That appellant was guilty of negligence, which was the proximate cause of appellee's injury.

*Second.* That the appellee was free from any negligence which proximately contributed to the injury.

The negligence relied upon by the appellee was the act of appellant in leaving the wheels of the traveler unchocked or unfastened.

Actionable negligence consists in the breach of some duty owing from the defendant to the plaintiff, by reason of which the plaintiff was injured. *Morrow* v. *Sweeney,* 10 Ind. App. 626; *Carskaddon* v. *Mills,* 5 Ind. App. 22; *Thiele* v. *McManus,* 3 Ind. App. 132.

The duty must be one which the defendant owes to the plaintiff, although he may owe this duty to the plaintiff in connection with other persons. If the defendant owes a duty but does not owe it to the plaintiff, there is no liability. 1 Shearm. & Redf. Negl., section 8; *South Bend Iron Works* v. *Larger,* 11 Ind. App. 367.

That the appellant owed to its employes generally the duty of blocking the wheels of the traveler so as to prevent it from moving while they were at work about it, may be conceded. Had the appellee been injured by the movement of the main wheels of the traveler while at work, or while passing over the tramway *en route* to the ground, or by the traveler "rolling down upon" him at such time, as alleged in the complaint, we should have a different case. But that the appellant was bound to anticipate that the appellee would use the cogwheels as a foot rest or stepping point in his journey to and from his work in such a way as to encounter the peril of having his foot drawn in the cogs, we are not prepared to hold.

Conceding, however, that the appellant was negligent

in leaving the wheels of the traveler without props or chocks, the question still remaining to be determined is, did the appellee exercise proper and ordinary care when he voluntarily placed his foot in the cogwheels and left it there for two or three minutes, as he testifies he did, without knowing that the wheels were chocked, and when he had other means of egress from the traveler?

We think there is but one way in which this question may be answered, and that is in the negative.   Nothing is better settled in connection with the law of negligence than the rule that persons must exercise their faculties in such a way as to avoid danger, if they can reasonably do so, and the failure to do this will, if it contributes proximately to the injury, prevent the plaintiff from recovering.

It is idle to say the appellee did not know that the wheels of the traveler were not blocked or propped, and that he would not have stepped in the cogs had he known this.   Such an excuse is on a par with the one usually made for the man who blows in the muzzle of the gun to ascertain whether it is loaded.

The appellee testified that he could not have seen from where he was when injured, whether the wheels were blocked or not.   But there was nothing to require him to place his foot in such a dangerous place without some knowledge of the safety of the position which he had voluntarily assumed.   He was not compelled to take this route.   For aught that appears, there were many other ways in which he might have passed down without coming in contact with these cogs, and the burden was upon him to show freedom from negligence.   He admits that he might have gone down on the opposite side without encountering this danger, although the route was somewhat longer than the one he selected.   If he desired to make the cogwheels a stepping point for egress from and

ingress to his place of employment, he should have first ascertained whether it was safe to do so.

Nor does it make the least difference, as we conceive the law to be, whether the appellee was employed as a skilled mechanic or a common laborer. There is no evidence to show that he was employed solely to work upon the ground, and appellee admits that he had been at work upon the traveler for a number of days without objection. The fact that he had no experience in building scaffolds can not aid the appellee. He was not injured while building a scaffold or as the result of a failure to instruct him on the part of appellant. All that was necessary for him to do under the circumstances was to exercise his faculties in a way that men of ordinary prudence usually exercise them, and he could easily have avoided the injury. Nor is it easy to perceive how the injury can be said to be the proximate result of the appellee's obedience to the orders of Pearson, the viceprincipal. Such orders in no manner involved the placing of his foot in the cogwheels or even so near them that appellee was likely to be injured thereby. There is not a scintilla of evidence going to show that the duties assigned the appellee required him to be in the position in which he was when injured, and there was, therefore, nothing to warrant the jury in coming to that conclusion.

The two essential elements in contributory negligence are want of ordinary care by the plaintiff, and a causal connection between such want of care and the injury complained of. Beach Contrib. Neg., section 19.

Of course what is and is not ordinary care must always depend upon the circumstances of each particular case. It is said that ordinary care should be that degree of care and foresight which a discreet and cautious individual would, or ought to, use if the whole risk and loss

were to be his own exclusively.  *Mayor, etc.,* v. *Bailey,* 2 Denio, 433; *City of Madison* v. *Ross,* 3 Ind. 236; 54 Am. Dec. 481.

That no person exercising ordinary prudence and care would voluntarily place his foot where the appellee placed his, without knowing that the wheels were blocked or hemmed so that they could not move, we think must be admitted.  That the appellee's negligence, therefore, proximately contributed to the result can not, it seems to us, admit of a serious doubt or dispute.

The evidence shows a clear case of contributory negligence, as we view it, and it was for that reason insufficient to support the verdict.  The appellant was entitled to a new trial.  Judgment reversed.

