The Salem-Bedford Stone Company *v.* O'Brien.

---

THE SALEM-BEDFORD STONE COMPANY *v.* O'BRIEN.

[No. 17,855.    Filed Feb. 24, 1898.    Rehearing denied June 10, 1898.]

APPEAL AND ERROR.—*Nunc Pro Tunc Order.—Evidence.—Presumption.*—Where no appeal was asked or granted at the close of the trial, and a *nunc pro tunc* entry was made at the succeeding term of court correcting such omission, it will be presumed that the evidence adduced was sufficient to justify the action of the court, where neither the motion for the entry nor the evidence upon which the court acted was made part of the record.   *p. 657.*

SPECIAL VERDICT.—*Formal Defects.*—A special verdict will not be set aside on account of mere formal defects, where it does not appear that any objection was made to the verdict when it was received. *p. 658.*

MASTER AND SERVANT.—*Personal Injuries.—Contributory Negligence.* —Where an employe engaged in handling heavy stone by means of a traveler and other machinery on an elevated track, under the direction of a superintendent, and while going to the ground, as required, stepped upon a shaft which revolved by reason of a sudden gust of wind striking the traveler, and his ankle was drawn into the bevel gearing thereof and injured, he was not guilty of such negligence as to bar a recovery for such injury, where it was shown that he was a common laborer and employed as such, and that it was the custom to chock or brace the wheels of the traveler when it was at rest, and that plaintiff had reason to believe that it was chocked at the time, and could not have discovered that it was not chocked without making close inspection thereof. *pp. 658-662.*

From the Lawrence Circuit Court.   *Affirmed.*

*E. K. Dye, Elliott & Elliott* and *W. H. Martin,* for appellant.

*M. F. Dunn* and *S. B. Lowe,* for appellee.

The Salem-Bedford Stone Company *v.* O'Brien.

HOWARD, C. J.—The appellee recovered judgment against the appellant in the sum of $4,750.00, for personal injuries alleged to have been caused by the wheels of a heavy piece of machinery called a "traveler," said to have been used by appellant in a negligent manner in connection with the business of its stone quarry.

It is contended by counsel for appellee that there is no question before us, for the reason that the record does not show that any appeal was prayed or granted at the close of the trial. At the succeeding term of court, there was an attempt to correct this apparent omission, by the entry of a *nunc pro tunc* order. It must be said that this attempt is not shown to have been a very satisfactory one; but the order made, though crude, was perhaps sufficient for the purpose intended. Moreover, appellee has not caused the motion for this *nunc pro tunc* entry, nor the evidence upon which the court acted, to be brought up by bill of exceptions or otherwise, and we must presume that the evidence adduced was such as to justify the action of the court. *Ellis* v. *Keller*, 82 Ind. 524.

The first error assigned is, that the court overruled a demurrer to the complaint. On a former trial of the case, judgment was given appellee in the sum of $3,000.00. This judgment was reversed in the Appellate Court, *Salem-Bedford Stone Co.* v. *O'Brien*, 12 Ind. App. 217. On that appeal the complaint was held good. The complaint now before us is not substantially different from that on the former appeal, and we are of opinion that there was no error in overruling the demurrer to it.

The verdict was a special one, by answers to interrogatories, under the act of 1895, now repealed. Acts 1895, p. 248. Nearly 220 questions were pre-

pared by counsel on both sides. So great a number of interrogatories seems to have been quite unnecessary, and hardly in accordance with the spirit of the act referred to. That statute required the finding, simply, of the facts essential to the decision of the issues involved. It is not to be wondered at that there may be some apparent confusion, or even contradiction, in the multitude of answers to interrogatories in the case at bar. But we do not think the verdict is shown to be so defective that no judgment could be rendered upon it, or, consequently, that a *venire de novo* ought to be awarded.

As to mere formal defects complained of, it does not appear that any objection was made to the verdict when it was received. The court should have had an opportunity to send the jury back to correct any such errors in the verdict. *Chicago, etc., R. R. Co.* v. *Ostrander*, 116 Ind. 259.

The third and fourth assignments of error, relating to the action of the court in entering judgment upon the verdict, may be considered together. From the answers returned by the jury to the interrogatories submitted to them these facts appear: On July 28, 1892, and previous thereto, the appellant was engaged in the business of moving heavy stone and loading the same on cars by means of travelers and other machinery, under direction of one Pearson, as superintendent, in full charge of the business, and with power to employ and discharge men. On July 4, 1892, appellee was employed by Pearson to work as a common laborer, and "scabble" stone, and continued in appellant's employment until his injury on July 28, 1892. It is found that appellee had no skilled knowledge of travelers, tramways, or other machinery, or the mechanism relating thereto, used in and around the place where he was employed, and that appellant knew that

he had no such knowledge or experience; but that appellant and its said superintendent in charge had full knowledge of all these matters, and by inspection could have discovered the exact condition of the machinery before and at the time of the injury to appellee, but that no such inspection was made. From twenty-seven to 100 men were employed in and around appellant's works. Notwithstanding the fact that appellee was employed only as a common laborer and to scabble stone he was often sent up to work on one of the travelers, and on the cab running along the same. The jury find that this was a more hazardous place to work than on the ground. The traveler on which he was injured was about twenty-five feet from the ground, and rested upon trucks that moved along tramways on either side. The traveler extended north and south, and the tramways east and west. Above the traveler was a cab that moved over the traveler, from one side of the tramway to the other. There were two principal ways for reaching the traveler, one by a ladder near the north trucks and the other by a ladder near the south trucks. Appellee on the day of his injury was at work under the cab and above the traveler. The place was difficult of access, by reason of the ladders, tramways, and trusses up and over which it was necessary to go in order to reach it. The jury find that in moving along on the way to or from his place of work it was necessary, on account of the narrowness of the beams on which he stepped, for appellee to give close attention to where he placed his feet and hands in order to avoid slipping or falling to the ground. The distance to appellee's place of work by the north ladder was about forty feet shorter than by the south ladder; and it was usual for those at work near the north end of the traveler to ascend and descend by the north ladder, as appellee did on this occasion. There

was nothing to indicate any unusual danger as appellee proceeded to descend at the time he was hurt. The traveler, with its chords, rods, and appurtenances, was very heavy, weighing from eighteen to twenty tons. The usual mode of moving the traveler on its trucks was by pinch-bars applied to the wheels resting on the iron rails of the tramways, and the appellee had helped to move it by such pinch-bars. When the traveler was at rest the wheels were kept in place by "chocks," or small wedges of wood slipped under them. This was not done on the day of the accident, but was done on all other days. Appellee knew that before that time the machine had been kept "chocked," but did not know that this had been neglected on the day in question. Had the wheels been chocked as usual the wind could not have moved the traveler. The jury find that if the traveler had not been put in motion by the wind appellee would not have been hurt; they also find that appellant, at and before the time of the accident, knew that, in order to prevent the traveler from being moved by a sudden gust of wind, it was necessary to chock it by placing small pieces of wood under the wheels, but that appellant on that day failed to see whether the machine was chocked or not, or to give appellee any instruction in relation thereto. It is also found that another means used to keep the traveler in position was by a rope with weight, but that no such means of safety was resorted to on this day. They find further that appellee, giving due care to his personal safety at the height where he was at work, and giving due attention to his work, could not have discovered that the machine was not chocked or braced, without making close inspection of each wheel, and that it would require special inspection to make such discovery. At the time of the injury appellee's duty required him to go to the ground

from his work under the cab. He had gone down in safety before on that day. On his way down, on the occasion of the injury, the shaft of certain bevel-gearing attached to the trucks was in his pathway. This shaft was about twelve inches below the beam of the truck, and formed a step on the way from the truck down to the tramway. The shaft was stationary when he put his foot upon it, and apparently as safe a place to step as anywhere else. While his foot was yet on the shaft a gust of wind struck the traveler, and the shaft suddenly revolved and caused appellee's ankle to be drawn into the bevel gearing, and thereby crushed. It is found that at the time when appellee went from his place of work to the point where he was injured he could not have seen that the traveler was not chocked. No other findings made by the jury show the facts to have been different from those above set out.

No question is made as to the negligence of the appellant; and that the company was negligent, as alleged in the complaint, is in no way controverted. For some reason not shown, the traveler was not on this occasion made secure either by chocks, or by rope and weight, as had been done theretofore, and as was necessary to keep it from being moved by the wind, as well known to the appellant. Appellee knew nothing of this neglect, and had no reason to suspect it. He could not see under the wheels on his precarious way down, and knowing that they had been chocked on other days, had a right to believe that they were also secured on this occasion. The shaft was used as a step on his pathway and seemed as safe a place to step as any other on his way down. Suddenly, and without any warning, while his foot was yet upon the shaft, the wind started the traveler and he was injured. We can discover no negligence on the part of

appellee, and we think the findings show conclusively that he was free from any act contributing to his injury. He was injured in the line of duty, without his fault, and by reason of the neglect of appellant in failing to secure the traveler in its place. As these findings are supported by the evidence, no error is shown. Judgment affirmed.