TED C. PHILLIPS *v.* JACK P. CROY AND JANE CROY.

[No. 3-275A25. Filed June 23, 1977. Rehearing denied August 9, 1977. Transfer denied October 26, 1977.]

*Herbert H. Bent,* of Warsaw, for appellant.

*Edgar W. Bayliff, Bayliff, Harrigan, Cord & Maugans,* of Kokomo, for appellees.

GARRARD, J.—Jack P. Croy (Croy) was injured while standing between two trucks which were stopped in the southbound lane of a county road near Leiters Ford on the evening of December 29, 1972. The injury occurred when the northern-

most truck was struck in the rear by a vehicle driven by Phillips. The case was tried by the court. There was no request for special findings and the court entered none. The trial resulted in a judgment that the plaintiff recover. The issue presented on appeal is whether Croy was guilty of contributory negligence as a matter of law. Finding that he was, we reverse.

The question, of course, is whether Croy exercised for his own safety the care which would be exercised by a reasonable man of ordinary prudence under the same or similar circumstances. In assessing the question we must consider all the facts and circumstances material to the answer. At the same time our appellate review is limited to viewing this evidence and the reasonable inferences therefrom in the light most favorable to the decision, and determining from that perspective whether the only reasonable conclusion was contrary to that reached by the court.

The record discloses the following evidence. Croy operated a grain elevator along County Road 750W immediately south of the railroad tracks which pass the south edge of the Town of Leiters Ford. On the evening of December 29, 1972, an employee and customer of the elevator, Garland, was unable to start his ¾ ton pickup truck which was parked at the elevator. Croy attempted to start the truck by towing it around the parking lot at the elevator with Croy's own pickup truck. When this was unsuccessful Croy towed the pickup south on 750W, which was a straight, level, two-lane road. The pickup still did not start, and both vehicles stopped in the southbound lane approximately 800 feet south of the railroad. In this area from the railroad to a point 300 feet or so south of the collision there were eleven homes along the west side of 750W. There were open fields along the east side of 750W. The trucks stopped in front of the residence of one, Gupton, and at the edge of his driveway. Immediately to

the south of Gupton's was the residence of John Gamble which had a semi-circular driveway with two entrances onto 750W. Both driveways were large enough to accommodate the two pickup trucks.

Croy then turned his truck around and parked it facing north in the southbound lane approximately two feet from the Garland truck. The hoods of both trucks were then raised for an attempt to start the Garland truck with jumper cables. Croy and Garland discovered they did not have any cables, but at this point a northbound pickup truck driven by Dean Lehman arrived. Lehman stopped in the northbound lane by Garland's truck. He furnished a set of jumper cables which Croy, standing between his own truck and Garland's truck, attached to those vehicles. While he was thus standing, a southbound automobile driven by Phillips struck the rear of the Garland truck pinning Croy between the two trucks and causing the injuries complained of.

Although Croy (as did Lehman) had flares in his truck, none were placed along the road to warn approaching traffic. No one was posted as a lookout for approaching traffic. The taillamps of the Garland truck were lit and visible. The headlights and fourway flashers on the Lehman truck were lit and visible. The collision occurred at 6:30 p.m., approximately one half hour after sunset. There was sufficient light to see outlines and objects but it was approaching full darkness. There were no street lights. It was also drizzling rain but this had no substantial effect upon vision. When the collision occurred the trucks had been stopped upon the highway for about fifteen minutes and the jumper cables had been attached for approximately two minutes.

We first note that this is not a case where the issue is framed by the assertion that because of the equality of their conduct, either both parties were negligent or neither one was. Here, for purposes of appeal, it is conceded that there was ample

evidence upon which to determine that Phillips was guilty of negligence which was a proximate cause of the collision.

In determining whether Croy was guilty of contributory negligence as a matter of law, three things must be borne in mind.

First, we are limited to dealing with the question of law. We may not reassess credibility nor reweigh the evidence. Our starting point resolves such questions in favor of the verdict or decision. In other words, our inquiry commences with an assumed set of facts consisting of the evidence and the reasonable inferences that might be drawn therefrom which favor the result reached at trial. We then consider those facts and inferences in the light of the law. The law standard in negligence cases is the conduct of a "reasonable man." While the standard relies substantially on human experience and thus contains fact-related flexibility, it is nevertheless a *law* standard.[1] Necessarily then, and however difficult of articulation, the determination of what constitutes "reasonableness," or the "reasonable man" includes a law policy element.[2] It is properly the function of an appellate court to determine this law question which implicitly exists, although it normally does so under the somewhat misleading statement that its conclusion is the only conclusion a reasonable trier of fact could reach upon the assumed evidence.[3]

Secondly, we do not recognize degrees of negligence. There is only one standard: reasonable care under the circumstances.

1. If it were purely a fact standard, then would not the conclusions of the trier of fact be unassailable and community polls as to what is reasonable be outcome determinative *Cf. Dudley Sports Co., Inc.* v. *Schmitt* (1972), 151 Ind. App. 217, 277 N.E.2d 266, 276; and *Pierce* v. *Horvath* (1968), 142 Ind. App. 278, 233 N.E.2d 811, 815.

2. The definition of "reasonable" includes "just," or "proper." Webster's International Dictionary (2nd Ed.) unabridged.

·3. The statement is correct. It may, however, mislead the unwary because it masks the law requirements which exist as a part of being "reasonable."

However, to be reasonable, the quantum of care exercised must be proportionate to the danger to be avoided and the fatal consequences involved in its neglect compared to the importance of the right the claimant is seeking to advance. *Vivian Collieries Co.* v. *Cahall* (1915), 184 Ind. 473, 110 N.E. 672; *Toledo & Wabash Ry. Co.* v. *Goddard* (1865), 25 Ind. 185; *Guion* v. *Terre Haute, I. & E. T. Co.* (1924), 82 Ind. App. 458, 143 N.E. 20. *See, also,* Prosser, *Law of Torts* (4th Ed.), p. 419; and Learned Hand's formulation in *United States* v. *Carroll Towing Co.* (C.A. 2, 1947), 159 F.2d 169.

As a general rule we have often said in particular circumstances that a party, unless or until he has notice to the contrary, may presume that another who owes him a duty of care will exercise reasonable care. He need not necessarily anticipate the other's breach of duty for his own care to be found reasonable. *See, e.g., Hi-Speed Auto Wash, Inc.* v. *Simeri* (1976), 169 Ind. App. 116, 346 N.E.2d 607. Despite the general validity of this precept, occasions arise where a reasonable man may not rely upon the awareness or ability of all others to exercise due care to avoid his injury in determining the quantum of care he should exercise for his own protection. The apparent danger from the likelihood that another will be insufficiently careful and the potential for serious injury bear upon the conduct necessary to constitute ordinary or reasonable care under the circumstances. As stated by the writer in 57 Am. Jur.2d 738, *Negligence,* § 335:

> "The assumption [that others will use due care] is not consistent with the exercise of due care for one's own safety where relying upon it means ignoring a condition which is openly fraught with peril to the person."

*See, e.g., Indianapolis, D. & W. Ry. Co.* v. *Wilson* (1892), 134 Ind. 95, 33 N.E. 793; *Kilmer* v. *Galbreth* (1966), 139 Ind. App. 252, 218 N.E.2d 361; *Salem-Bedford Stone Co.* v. *O'Brien* (1894), 12 Ind. App. 217, 40 N.E. 430.

Thirdly, negligence and contributory negligence are determined upon the basis of *all* the material facts and circumstances. *Jones* v. *Carey* (1941), 219 Ind. 268, 37 N.E.2d 944; *Union Traction Co.* v. *Berry* (1919), 188 Ind. 514, 121 N.E. 655, 124 N.E. 737, 32 A.L.R. 1171. Accordingly, while we look at the facts in evidence from the light most favorable to the decision, we must nevertheless consider *all* the facts and inferences thus established that bear upon the issue of Croy's contributory negligence. Thus, Croy's arguments fall short of the proper consideration when he asserts *independently* that (a) his actions were reasonable because the evidence most favorable to the decision discloses the visibility of the vehicles despite the rain and impending darkness; (b) that considering the visibility of the vehicles despite the rain and impending darkness; (b) that considering the visibility of the lights on the vehicles it was not unreasonable to stop on the road; or (c) that it was not necessary to find the failure to place flares was a contributing cause because the court could have determined that Phillips' negligence was such that the crash would have occurred even if the flares had been placed. Similarly, the argument that Phillips *should* have noted the warning provided by the flashers on the Lehman vehicle, while a factor in considering Croy's actions, is mostly material to the question of *Phillips'* negligence, which is no longer in issue.

The evidence on the question of contributory negligence, resolving all conflicts in favor of Croy, established that Croy towed the Garland truck several hundred feet down a two-lane county road and stopped in the travelled portion of the road a few hundred feet from a railroad crossing and a 30 mph speed zone. At the time visibility was "good" but it was approaching complete darkness and there was a drizzling rain. Despite the availability of adjacent driveways and without apparent compulsion, Croy elected to attempt to start the Garland truck with jumper cables in the travelled portion of the road. In doing so he elected to

stand between the two closely parked vehicles with the hood of the Garland truck raised and without posting a lookout or placing the warning flares he carried in his own truck.

The undue risk of harm apparent in these actions does not constitute the conduct of a reasonable man exercising reasonable care. Clearly it was a contributing cause of Croy's injuries. Unlike the situations in *Dreibelbis* v. *Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634 and *Slinkard* v. *Babb* (1953), 125 Ind. App. 76, 112 N.E.2d 876, the danger of Croy's activity is not mitigated by the circumstances under which he was required to act. The danger in stopping in the travelled portion of a highway for any substantial period of time would occur to a reasonable man. The potential for serious injury to Croy should either his or Lehman's vehicle be struck by another vehicle is obvious. For Croy to elect, without compulsion, to forego the safety of the adjacent driveways; and having done so, and with the dark of night at hand and a drizzling rain existing, to further elect to proceed without utilizing flares or lookouts which were available; cannot be deemed the ordinary care a reasonable man would exercise for his own safety.

The decision is reversed with instructions to enter judgment for the defendant.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 363 N.E.2d 1283.