**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY and John Clark, Defendants-Appellants,**

v.

**Merle S. SCOLES and Carolyn S. Scoles, Plaintiffs-Appellees.**

No. 1–1281A374.

Court of Appeals of Indiana, First District.

May 25, 1982.
Rehearing Denied July 9, 1982.

Robert T. Bodkin, David J. Bodle, Bamberger, Foreman, Oswald & Hahn, Evansville, for defendants-appellants.

Rodney H. Grove, Grove, Miller & Krohn, Evansville, for plaintiffs-appellees.

NEAL, Judge.

Defendants-appellant Southern Indiana Gas and Electric Company and John Clark (SIGECO) appeal a judgment for personal injuries in favor of plaintiff-appellee Merle S. Scoles (Scoles) after a jury trial in the Gibson Circuit Court.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the judgment is as follows: On September 7, 1976, Scoles, age 51, an employee of SIGECO, was on picket duty in broad daylight on Darlington Road which led west to the strike-bound Culley and Warrick Power stations owned by SIGECO in Warrick County, Indiana. Accompanying him on picket duty were other employees of SIGECO, namely Richard Smith, Mike Norton, Tim Nohr, and John Brown. The Darlington Road is a narrow, 15 foot wide, rural, gravel road, along the south side of which the pickets had erected a canvas shelter. A court order fixing the ground rules for picketing permitted the pickets to stop all motor vehicles approaching the plants briefly and talk to the drivers to encourage them not to cross the picket line. The order also directed all plant personnel who were not on strike to make a courtesy stop at the picket line. The pickets were instructed by their union, upon the approach of a motor vehicle, to walk back and forth across the road with their sign, and cause the vehicle to stop.

On the date in question, John Clark, one of the supervisory personnel not on strike and who was conversant with the above outlined rules governing picketing, approached the picket line. He was traveling in a westerly direction in a company car and proceeded to brake his vehicle to a stop. Scoles, upon seeing Clark's approach, picked up his picket sign and commenced to walk back and forth across Darlington Road, and as he did so, he continued to watch Clark's automobile. Clark, noting that Scoles was in the road, continued to slow, but as he did so he pulled off the left side of the road and directed his vision to pickets on the left, or south side, of Darlington Road. Scoles, assuming Clark was stopping, started across the road from north to south, first looking to the west down the road for other traffic, and then, upon looking back, Clark's car struck him. Scoles was knocked backward, and down, catching himself with his right hand and arm. He was partially under the car when Clark stopped, but crawled out.

Scoles went over and sat down beside the edge of the road. A skinned place on his lower leg was bleeding, but he could walk, and in answer to Clark's question whether he was hurt, answered that he was. Clark then drove on and later reported the accident to proper company officials. Scoles drove to union headquarters in Evansville to seek directions on what doctor they desired him to attend for he had developed sharp pains in his back and leg, and his leg was getting numb. Upon discovering the absence of the business agent at the union hall, he went to his own doctor, Dr. Getty, who x-rayed him, gave him pain pills and muscle relaxants, and sent him home. Later, after tests and hospitalization by Dr. Getty and Dr. Mok, Scoles was hospitalized under the care of an orthopedic surgeon, Dr. Woodward. After reviewing Scoles' history, making tests and examinations, and having performed a myleogram, Dr. Woodward diagnosed Scoles' condition as a herniated, or ruptured disc at the fifth lumbrosacral interspace. In October, 1976, a laminectomy was performed removing the disc. Scoles returned to work on January 11, 1977. His condition proved to be unsatisfactory, and during 1977 he was hospitalized again and was prescribed a brace. Ultimately, in June, 1978, Dr. Woodward performed a spinal fusion. At trial time Scoles was not as yet able to work. He can walk, but he cannot lift, and has pain in his back and leg which disturbs his sleep, thereby requiring medication for pain and sleep.

Scoles' medical history revealed some previous back involvement. In May, 1959, he was diagnosed as having a lumbosacral strain, osteoarthritis, and a degenerated disc, which Dr. Woodward described as a worn out disc. In June, 1975, he slipped and hurt his back at work at SIGECO which was diagnosed as low back strain with no neurological defect. No radicular pain was present in the 1975 episode. Dr. Woodward testified that the 1959 and 1975 back symptoms could be present and not necessarily be indicative of a herniated disc, and it was significant to support that view that in 1975 no radicular pain was present. In conclusion, he stated that based on a

reasonable medical certainty he would have to assume that the cause of the herniated disc was the September 7, 1976, accident on the picket line, and that the condition was permanent. He further stated that Scoles was totally disabled so far as work is concerned.

### ISSUES

The issues[1] presented for review are:

I. Whether the trial court erred in overruling defendants' motion for judgment on the evidence at the conclusion of all the evidence;

II. Whether the trial court erred in refusing to give defendants' tendered instructions number 6 and 7;

III. Whether the trial court erred in giving plaintiffs' tendered instruction number 4 over defendants' objection;

IV. Whether the trial court erred in giving plaintiffs' tendered instruction number 11 over defendants' objection;

V. Whether the trial court erred in giving plaintiffs' instruction number 12 over defendants' objection;

VI. Whether the jury verdict is contrary to the law;

VII. Whether the jury verdict is contrary to the evidence; and

VIII. Whether the verdict of the jury is excessive.

### DISCUSSION AND DECISION

*Issues I, III, VI and VII. Sufficiency of the evidence*

SIGECO combines Issues I, III, VI, and VII into one argument, which all essentially raise the question of the sufficiency of the evidence, and we shall discuss them in the order argued. The argument is presented in two parts.

**1.** Initially, other issues were presented, but subsequently withdrawn in SIGECO's reply brief.

The first argument addresses the refusal of the trial court to withdraw certain issues from the consideration of the jury because of insufficient evidence. The alleged acts of negligence contained in Scoles' complaint are as follows:

1. Failure to keep a lookout for the plaintiff, Merle Scoles;

2. Failure to exercise control over the brakes and steering mechanism of the vehicle the defendant John Clark was driving;

3. Failure to stop the vehicle before striking the plaintiff; and

4. Failure to stop the vehicle.

SIGECO argues that specification 4, which stated that defendant was negligent for "failure to stop the vehicle," was duplicitous, not supported by the evidence, and should have been withdrawn from the jury. SIGECO raises no other matters under this argument, and therefore, any other contentions are waived. *Sebasty v. Perschke,* (1980) Ind.App., 404 N.E.2d 1200. In support of this argument SIGECO contends that *all* of the evidence established that Clark did stop before contact with Scoles. It correctly states that upon proper request the trial court should withdraw from the consideration of the jury any issue upon which there is no evidence. *Northern Indiana Transit, Inc. v. Burk,* (1950) 228 Ind. 162, 89 N.E.2d 905. SIGECO further correctly notes that it is reversible error not to withdraw an issue even if the evidence and instructions as a whole are sufficient to support the jury's verdict on the other issues presented to it. *Lawson v. Webster,* (1962) 133 Ind.App. 296, 181 N.E.2d 870; *Tribune-Star Publishing Co. v. Fortwendle,* (1953) 124 Ind.App. 618, 115 N.E.2d 215. In *Richmond Gas Corp. v. Reeves,* (1973) 158 Ind.App. 338, 302 N.E.2d 795, the court stated that where there is any evidence from which reasonable inferences can be drawn tending to support the theory there is a question of fact which the jury must decide.

Reference to the transcript indicates that SIGECO is in error. It is true that witnesses Norton, Watson, and Smith did testify that before contact Clark's car came to a stop, and then moved forward into and striking Scoles. However, Scoles testified that the Clark car did not stop, and Clark himself stated that he did not stop before contact. We perceive no error in the trial court's refusal to withdraw specification number 4, and to further instruct concerning it.

In the second argument on the sufficiency of the evidence SIGECO asserts that Scoles was guilty of contributory negligence as a matter of law. SIGECO argues that Scoles, by his own testimony, saw Clark approach nearly one-fourth mile away, but stood in the roadway and then looked away as the car approached within a car's length. SIGECO contends that Scoles knew that when the driver approached the picket line the driver's attention would be diverted, and that he would stop and talk to the pickets for 15 seconds or so and then go on. Therefore, when Scoles looked away from Clark's approaching car, which was still traveling at 5–9 m. p. h., such conduct would not constitute the acts of a reasonable man as a matter of law.

The relevant rule is contained in *Carroll v. Ely*, (1980) Ind.App., 398 N.E.2d 1364, at 1365.

" 'The prevailing Indiana rule is that contributory negligence is generally a question of fact for the jury to determine where the facts are such as to be subject to more than one reasonable inference. However, where the facts are undisputed and only a single inference can reasonably be drawn therefrom, the question of contributory negligence becomes one of law. [Citations omitted.]

'The Supreme and Appellate Courts have many times recognized the test for "negligence as a matter of law" to be that negligence which is so clear and palpable that no verdict could make it otherwise. [Citations omitted.]

'In applying this test both the Supreme and Appellate Courts have adopted the rule that the voluntary conduct of one exposing himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising due care for his safety would have hazarded them is negligence as a matter of law.' [Citations omitted.] *Stallings et al. v. Dick* (1965), 139 Ind.App. 118, at 124–125, 210 N.E.2d 82, at 86. *See also: Meadowlark Farms, Inc. v. Warken* (1978), Ind.App., 376 N.E.2d 122; *Koroniotis v. LaPorte Transit, Inc. et al.* (1979), Ind.App., 397 N.E.2d 656."

SIGECO cites *Carroll*, as well as *Phillips v. Croy*, (1977) 173 Ind.App. 401, 363 N.E.2d 1283, to support its position. We are of the opinion that those two cases are readily distinguishable from the present case on their facts. In *Carroll*, the court held that the act of plaintiff's decedent running out from behind a stopped or nearly stopped car onto a state highway in the dark in front of a motorist proceeding in a normal fashion was contributory negligence as a matter of law. In *Phillips*, the court held contributory negligence existed as a matter of law on the following facts: The plaintiff, after unsuccessfully towing a vehicle to start it, parked both vehicles on the traveled portion of a two-lane road in the dark and rain to use jumper cables. He did not put out flares, though he had them, or post a lookout, and parked the vehicles on the road despite the fact that adjacent or nearby driveways existed to park the vehicles off the road. Plaintiff was between the cars attaching the jumper cable when struck by the defendant.

The common law does not impose upon a pedestrian an absolute duty to take any particular precaution in the exercise of ordinary care. The test is due care, and it is still for the jury and not the court to say what conduct on his part, under all of the circumstances, measures up to the requirements thereof. *Fields v. Hahn*, (1944) 115 Ind.App. 365, 57 N.E.2d 955.

Here, the evidence reflects that Scoles knew Clark was going to stop, and Clark did stop, as instructed, but not until he struck Scoles. However, prior to

stopping, he directed his attention to the pickets on the left side of the road and paid no further attention to Scoles. It can be inferred that Scoles, under the impression that Clark would stop short of striking him, started across the road in front of Clark's vehicle. We are of the opinion that these facts present a question for the jury on the issues of contributory negligence.

### Issue II. Instruction

Here, SIGECO claims the trial court erred in refusing to give its instructions number 6 and 7. Instruction number 6 would have instructed the jury of the existence of Ind.Code 9–4–1–88, which, in part, reads:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

Instruction number 7 would have instructed the jury that the violation of the statute was *prima facie* evidence of negligence which then placed the burden of showing justifiable excuse upon the violator. SIGECO correctly asserts that it is reversible error to refuse to give a tendered instruction that is a correct statement of the law, applicable to the facts, and is not covered by any other instruction. *Southern Indiana Gas and Electric Company v. Steinmetz,* (1977) Ind.App., 377 N.E.2d 1381.

We are of the opinion that the trial court properly refused the instruction for the reason that the statute is not applicable to the facts of this case. The court order fixing the ground rules for picketing altered the factual context to which the statute was applicable. Clark was instructed to stop, and Scoles was permitted to be in the road. The negligence litigated was not in failing to stop, but not watching and not stopping soon enough. Instructions number 6 and 7 bore little relation to the realities of this case, and the trial court did not err in refusing them.

### Issue IV. Instruction

Here, SIGECO contends that the trial court erred in giving to the jury Scoles' tendered instruction number 11, because it is an incorrect statement of the law. The instruction reads as follows:

"The Court instructs you that all persons operating vehicles on public highways have a duty to exercise such care and caution as a reasonably careful and prudent person would exercise under the same or similar circumstances; and you are further instructed that all persons using a public highway, including pedestrians, do not have to anticipate that persons operating vehicles on public highways will fail to exercise such care and caution as a reasonably careful and prudent person would exercise under the same or similar circumstances."

The defendant's objection to the plaintiff's tendered instruction number 11, as given by the trial court, was as follows: "Defendant objects to the giving of Plaintiff's instruction number 11 for the reason that the only duty the defendant would have would be to keep a lookout and the instruction would indicate that the plaintiff does not have to anticipate persons who might fail to exercise that duty which is not a correct statement of the law, and for the further reason that instruction number 11 is covered, at least in substance, by instruction number 10 as tendered by the plaintiff and given by the Court, and therefore, the use of both instructions together draws undue emphasis to the proposition of plaintiff's non-duty."

SIGECO argues that the foregoing instruction is an incorrect statement of the law because, while a plaintiff has the right to assume that others owe him a duty of reasonable care, that assumption or reliance is not justified where the plaintiff has knowledge or notice to the contrary. SIGECO cites the following case of *Phillips v. Croy,* (1977) 173 Ind.App. 401, 405, 363 N.E.2d 1283, where the court held:

"As a general rule we have often said in particular circumstances that a party,

unless or until he has notice to the contrary, may presume that another who owes him a duty of care will exercise reasonable care. He need not necessarily anticipate the other's breach of duty for his own care to be found reasonable. [Citation omitted.] Despite the general validity of this precept, occasions arise where a reasonable man may not rely upon the awareness or ability of all others to exercise due care to avoid his injury in determining the quantum of care he should exercise for his own protection. The apparent danger from the likelihood that another will be insufficiently careful and the potential for serious injury bear upon the conduct necessary to constitute ordinary or reasonable care under the circumstances. As stated by the writer in 57 Am.Jur.2d 738, *Negligence,* § 355:

'The assumption [that others will use due care] is not consistent with the exercise of due care for one's own safety where relying upon it means ignoring a condition which is openly fraught with peril to the person.'

*See, e.g., Indianapolis, D. & W. Ry. Co. v. Wilson* (1982), 134 Ind. 95, 33 N.E. 793; *Kilmer v. Galbreth* (1966), 139 Ind.App. 252, 218 N.E.2d 361; *Salem-Bedford Stone Co. v. O'Brien* (1894), 12 Ind.App. 217, 40 N.E. 430."

SIGECO concludes its argument by stating that Scoles, fully aware of the approach of Clark's vehicle, was not entitled to disregard his own safety and continue to stand in an oncoming vehicle's path, and look away when the vehicle was only a car length away. Having had notice of the perilous situation, SIGECO argues, Scoles was not entitled to rely upon SIGECO's driver, Clark, exercising due care. Therefore, SIGECO contends, the instruction was an incorrect statement of the law.

We first observe that SIGECO's argument is, in truth, that the instruction was not applicable to the facts, not that it was an incorrect statement of the law. Yet, SIGECO's faulty analysis of the facts is apparent. Neither Scoles' case, nor SIGECO's defense, is predicated upon the theory that Clark was going down the road unim-

peded by other considerations and that Scoles simply walked out in front of Clark and got hit, which is what SIGECO's argument assumes. The court order, as stated above, altered the applicability of the usual traffic rules. This altered condition, clearly understood by Clark and Scoles alike, required Clark to stop, and permitted Scoles to walk back and forth across the road. Scoles' theory seemed to be that as Clark was coming to a stop the driver diverted his attention from Scoles, whom he had admittedly seen, and directed his attention to other pickets to the left of the road, and struck Scoles. Clark did stop, as intended, but not before striking Scoles. Therefore, the instruction informing the jury that Scoles need not anticipate Clark's negligence in this regard was not error.

*Issue V. Damage instruction*

SIGECO contends that the trial court erred in giving plaintiff's tendered instruction number 12, a damage instruction, because of element 8. Element 8 told the jury that in their consideration of the amount of damages they could consider

"8. The reasonable value of all expenses, including doctors, hospitals, nursing and medical expenses, if any, which will in the future be reasonably necessary to treat and care for Merle Scoles' injuries, if any, and any other future expenses, if any, to be reasonably incurred by a proximate result of the accident."

SIGECO objected because

". . . there is no evidence to support element Eight of the instruction with regard to future hospital or nursing care, therefore, the jury is allowed to guess and speculate that such care will be required and for the further reason that the instruction mixed the letters a proximate cause with the proximate cause, and therefore leads to confusion between the jury on the proper standard."

SIGECO claims that Dr. Woodward established that there was no further treatment that could be rendered to help Scoles, and that it was only a possibility that any

further medical expense would be incurred for medication.

Our reading of the record, starting on page 629, shows the following:

"Q. Doctor, based upon your care and treatment of Mr. Scoles do you have an opinion based on a reasonable degree of medical certainty whether or not the disability which you have referred to is permanent?

A. It appears to be, sir.

Q. Is there anything in your opinion that can be done for Mr. Scoles from a medical standpoint to change the state of his disability?

A. None that I know of, sir.

Q. You anticipate, do you have an opinion based upon a reasonable degree of medical certainty whether or not Mr. Scoles will have occasion to have medical treatment in the future by reason of the condition for which you have treated him?

A. There's possibility, yes.

Q. And can you tell what type of treatment he will require, if any?

A. Well, one of the treatments is that he does occasionally has to have a narcotic for his pain and some physician has to furnish him the medication, and in order to furnish the individuals pain medication, I personally feel that the patient should be checked to see what is really happening to the individual before you empirically over the telephone give medications for pain."

 The record shows, therefore, that, at the very minimum, pain medicine and office calls would continue, which evidence was based upon a reasonable medical certainty. *Palace Bar, Inc. v. Fearnot,* (1978) 269 Ind. 405, 381 N.E.2d 858, held that testimony by a doctor that a certain thing was possible is not probative, but a doctor's opinion based on a reasonable medical certainty is probative evidence. Further, an instruction permitting the jury to consider certain elements of damage qualified by the phrase, "if any," does not constitute preju-

dicial error even though the evidentiary basis is lacking; and, if the award is supported by otherwise competent evidence, the burden of showing prejudice is not discharged. *Wimp v. Anthis,* (1979) Ind.App., 396 N.E.2d 918.

*Issue VIII. Excessive damages*

Finally, SIGECO argues that the damages awarded of $190,000 was excessive. As SIGECO correctly points out with citations of authority, it is fundamental that damages awarded must be within the scope of the evidence. *Prudential Insurance Company of America v. Executive Estates, Inc.,* (1977) Ind.App., 369 N.E.2d 1117. Further, each case will stand and fall on its own merit when an award is challenged as excessive, and an award will not be disturbed unless it is manifestly excessive. *Levin v. Schuckman,* (1971) 150 Ind.App. 254, 276 N.E.2d 208. Our standard of review was set forth in *Barrow v. Talbott,* (1981) Ind.App., 417 N.E.2d 917, at 921–22.

"Indiana courts have adopted a strict standard of review for appeals predicated upon the excessiveness or insufficiency of awarded damages. A verdict will be reversed only when it is apparent from a review of the evidence concerning the injuries that the amount of damages assessed was so small or so great as to indicate that the jury was motivated by prejudice, passion, partiality, corruption or else considered some improper element. . . . Where the evidence presented is conflicting as to the nature, extent and source of the injury, the jury is in the best position to appraise damages. In such cases, it cannot be said that the verdict returned by the jury was based upon prejudice, passion, partiality, corruption or on the consideration of some improper element." (Citation omitted.)

 Here, Scoles earned at the time of his injury $20,000 per year. At the time of trial, he was 56 years of age with a life expectancy of 23.34 years, and a normal work life of nine years, or until age 65. His medical expenses were $9,840. Since the accident, he has undergone pain and suffer-

ing. He is totally disabled from work, and his activities are limited. From this evidence we are unpersuaded that the jury was motivated by prejudice, passion, partiality, corruption, or that they considered some improper element.

For the above reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.