## GOODE, TRUSTEE, *v.* ELWOOD LODGE No. 166, KNIGHTS OF PYTHIAS.

[No. 20,032.    Filed March 17, 1903.]

APPEAL AND ERROR.—*Harmless Error.*—*Pleading.*—Overruling a demurrer to a bad answer is harmless, where all the matters pleaded were provable under the general denial. *p. 253.*

TRIAL.—*Directing Verdict.*—No error was committed in directing a verdict for defendant in an action by a trustee in bankruptcy to recover a sum of money alleged to have been received by defendant as preferential in violation of §60, subd. b of the bankruptcy law of 1898, 30 Stat. 562, where all the evidence concerning the payment was given by the bankrupt, and was in substance that witness who was master of exchequer of defendant lodge when he discovered his insolvent condition informed his wife of his having used the lodge's money and that she mortgaged her separate property and gave the husband the proceeds of the loan which he deposited in bank in his name as master of exchequer of the lodge and afterward delivered his check on the bank account to the trustees of the lodge, which account also included a deposit consisting of dues received from members of the lodge. *pp. 254-258.*

EVIDENCE.—*Conversation.*—In an action by a trustee in bankruptcy to recover a sum of money alleged to have been received by defendant as preferential, evidence as to a conversation had by the trustee with the bankrupt and with the bankrupt's wife long after the payment made to defendant was properly rejected, neither the bankrupt nor his wife being a party to the suit. *pp. 258, 259.*

From Superior Court of Madison County; *H. C. Ryan,* Judge.

Action by Martin E. Goode, trustee, against Elwood Lodge No. 166, Knights of Pythias. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*E. S. Griffin, Richard Broadbent, C. K. Bagot, Alfred Ellison* and *Thomas Bagot,* for appellant.
*C. M. Greenlee* and *B. R. Call,* for appellee.

HADLEY, C. J.—This action was brought by the appellant, as a trustee in bankruptcy, to recover a sum of money alleged to have been received by appellee as a preferential payment, in violation of §60, subd. b, of the bankruptcy law of 1898. Verdict and judgment for the defendant. The court overruled appellant's demurrer to the third paragraph of answer which forms the basis of the first assignment of error. It is, in substance, averred in the answer that Headley, the bankrupt, had for more than ten years prior to January 18, 1900, held the office of treasurer of the defendant lodge, and as such officer had received in trust for the lodge $1,496.37, $1,356.95 of which amount he had at the date aforesaid converted to his own use, and the balance, to wit, $139.42, he had, and had had since the day of its receipt, on deposit in the bank to his credit as such treasurer, and had never at any time commingled said $139.42 with his own money, and held and claimed it only as the money of said lodge; that the wife of Headley receiving knowledge that her husband had converted said sum of $1,356.95 to his own use, and, being anxious to assist him, paid to the defendant lodge said sum of $1,356.95 from her own individual estate, in full liquidation and settlement of the sum so converted; that she paid the sum by depositing the amount with the bank and to the credit and in the name of her husband as treasurer of the defendant, and which deposit added to the $139.42 already on deposit to

the credit of said treasurer, made up the full amount of money which Headley had received as such treasurer, to wit, $1,496.37, no part of which amount was ever used, claimed, or owned by Headley, or proceeded or was realized from his property, and was possessed and controlled by him in no other way but as the agent and trustee of said lodge, and which money, upon the request of the lodge, he turned over to it, in discharge of his trust, and not as a payment of a debt. ·

We see no reason why this is not a good answer. A trustee in bankruptcy will not be permitted, under the guise of an unlawful preference, to bring into the bankrupt's estate, as assets, property that never belonged to it, and to which the bankrupt had no claim. The wife had a legal right to pay her husband's debt, and such payment will not be adjudged fraudulent as against his creditors. Its payment from her separate estate did not diminish the assets of her husband's estate, and it can not be counted as his payment within the meaning of the bankruptcy law referred to.

But whether the answer is good or bad, overruling the demurrer to it did not constitute reversible error, because all the matters pleaded were provable under the general denial, which formed the first paragraph of the answer. A general denial traverses all the material averments of the pleading to which it is addressed. Hence under an answer of· general denial the defendant may prove any fact, independent of those alleged in the complaint, which is inconsistent therewith, and tends to overthrow the plaintiff's cause of action. *Marshall* v. *Beeber,* 53 Ind. 119 ; *Balue* v. *Sear,* 131 Ind. 301; *Johnson* v. *Schloesser,* 146 Ind. 509, 520, 36 L. R. A. 59, 58 Am. St. 367; *Jeffersonville Watter Sup. Co.* v. *Riter,* 146 Ind. 521.

If appellee lodge never received any preferential payment from Headley, as said by this court in Marshall's case, *supra,* "we do not see that there can be any better form by

which to present the question than by the general denial."
So, if the answer sets up facts sufficient to constitute a
defense, but amounts to nothing more than an argumenta-
tive general denial—as we think it does—it was not preju-
dicial error to overrule the demurrer to it. *Todd* v. *Badger*,
134 Ind 204. Likewise, if the facts set up in the answer
were insufficient to defeat the plaintiff's cause of action,
and all such facts were provable under the general denial,
it was not reversible error to overrule the demurrer to it.
*State, ex rel.,* v. *Osborn,* 143 Ind. 671, 680; *Board, etc.,* v.
*State, ex rel.,* 148 Ind. 675.

2.    At the conclusion of the plaintiff's evidence, the
court, upon motion, directed the jury to return a verdict
for the defendant. This action of the court is called in
question. Appellant insists that he did submit proper evi-
dence, which tended to sustain his complaint, and that
under many decisions of this court the sufficiency of such
evidence should have been left to the jury.

The evidence concerning the payment complained of was
wholly given by Francis M. Headley, the bankrupt, and
was, in substance, as follows: About the first day of Jan-
uary, 1900, the witness came to realize that he was
insolvent. He had been master of the exchequer of appellee
lodge for ten years, and as such officer had received of its
money $1,496.37, $1,356.95 of which he had mingled
with his individual money, and converted to his own use.
January 8, upon his invitation, he met with the trustees
of the lodge, and informed them that his affairs were in
bad shape, and he might have to make an assignment, or do
something like that, and he would like to settle for the
money he owed the lodge, and resign. He informed them
that he did not have all the money on hands, and requested
that the settlement be postponed a few days to enable him
to raise the balance of the money. This was agreed to. He
also informed the trustees at that meeting that he had con-
veyed to his son certain real estate, hoping thereby to invest

his son with such credit that he might be able to borrow the money with his son as surety, but, having failed in raising the money in that way, he had informed his wife of his having used the lodge's money, and the dilemma he was in, and requested her to raise the money for him on her separate property; that his wife had agreed to help him; that she was raising the money expressly for the lodge, and had already a draft in her possession for $900, which she had procured by mortgaging her farm in Tipton county, and was awaiting an abstract of title to the "home place," to enable her to procure the balance from the Anderson Loan Association. On January 12, 1900, his son, upon witness' request, conveyed the real estate to witness' wife, which had theretofore been conveyed by witness to his son, without consideration, and for the purpose of giving the son credit as above stated; the consideration expressed in the son's deed to his mother being $1,356.95 and the assumption by her of a mortgage on the property for $1,500. Having received the money from the loan association in the form of a check payable to her on January 13, 1900, his wife indorsed the draft and the check, both of which were payable to her, and were hers, and which aggregated $1,356.95, and gave them to witness, with instructions that he deposit the amount forthwith in the First National Bank of Elwood, for the lodge. In obedience to such instructions, he went immediately to the bank, which was but five blocks away, and delivered the draft and check to the bank, with directions that the same be deposited in his name as master of the exchequer of said lodge, which was accordingly done.

He had received in the first days of January, 1900, for the lodge, but $350, which was paid in by the members as dues for the preceding month of December, which money he kept in a separate pocketbook, and entirely distinct from his own money. From the amount he had paid divers orders drawn by the officers of the lodge, against the ex-

chequer, so that on January 17, 1900, there was remaining in his hands of said December dues $139.42, which he on that date deposited in the bank to his account as master of the exchequer, and which, added to the amount deposited under the directions of his wife, aggregated $1,496.37, the amount due the lodge, and on the next day, to wit, January 18, as master of the exchequer, he executed and delivered to the trustees his check, which they accepted in discharge of his indebtedness to the lodge, and which is the payment complained of. At the time of his first interview with the lodge trustees, Headley was contemplating bankruptcy proceedings, and had taken legal advice, and given his attorney $40 to be deposited as security for the costs in the court of bankruptcy. Upon demand of the trustee in bankruptcy, the bankrupt's wife conveyed to said trustee, by deed, the real estate conveyed to her by her son at the request of her husband. The trustees of the lodge knew, or had opportunity to know, that Headley was insolvent, before they received payment of their claim. The wife subsequently filed her claim against the bankrupt's estate and received a cash dividend thereon.

The proper rule with respect to the right of the court to direct the verdict was aptly stated in *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, 32 L. R. A. 149, thus: "Where the evidence given at the trial with all the inferences which the jury may justifiably draw from it is insufficient to support a verdict for the plaintiff so that such verdict, if returned, should be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant." In addition to the cases there collated, see *Dunnington* v. *Syfers,* 157 Ind. 458; *Menaugh* v. *Bedford Belt R. Co.,* 157 Ind. 20.

Under the bankruptcy act of 1898, if an insolvent transfers property to a creditor within four months before the filing of a petition in bankruptcy, and the person receiving shall have reasonable cause to believe that it was intended

to give him a preference, such transfer and preference shall constitute a legal fraud against the other creditors of the bankrupt, and may be avoided, and the thing, or its value, recovered by the trustee in bankruptcy from the person receiving it.   From this it is argued by appellee that the action, being rooted in fraud, may be established by inference alone from the facts admitted and proved at the trial, and hence it was error for the court to withhold from the jury the right to determine what inferences were properly deducible from the proved facts.   Back of this contention, however, lies the dominant question: From whose estate was the money paid to the lodge ? · If the money with which the payment was made was not the money of Francis Headley, and the assets of his estate were not in any way diminished thereby, then it does not concern the creditors of the bankrupt what the purpose and intention of the payor was. The inhibition of the statute affects only the act of the bankrupt in bestowing a greater proportion of his assets, after insolvency, upon some of his creditors than upon others, and has no reference to payments made by third persons not legally bound, although procured to be made by the bankrupt.   Here it is shown by the plaintiff (appellant), without contradiction, that Headley had, in violation of his trust, appropriated the lodge's money to his own use, and was exposed to a criminal prosecution.   He had tried other methods to raise the money, and had failed.   He presented the situation to his wife and she had promised to help him—had agreed to raise the money "expressly for the lodge."   The inducement to mortgage her Tipton county farm and the "home place" to raise the money for the specific purpose of paying the lodge is apparent.   When she had procured the money in the form of a draft and a check, both payable to her, she placed the credits in the hands of her husband, with specific instructions forthwith to deposit them in the bank for the lodge.   The possession of the hus-

band was not absolute, but subject to the condition imposed. The marital relation does not affect the question. The husband was as competent to act as the agent of his wife as for a stranger in conveying the credits to the bank. His limited possession conferred no right of property, and created no asset of his estate. *Dean* v. *State,* 147 Ind. 215.

It may be conceded that the wife raised the money for her husband, and for his benefit, but there is not a syllable of testimony in the record that goes to show that that benefit was to be enjoyed in any other way than by a discharge of the lodge debt, and thus probably save the family from dire consequences. Rather than complain, the creditors would consistently have wished for more such transactions, for the effect was to reduce the indebtedness of the bankrupt, and leave the assets undiminished.

As to the $139.42 which made up the balance of the lodge's debt, there is no question that it was trust funds. It was the undisbursed balance of the December dues, which had been kept by Headley as lodge money, separate and distinct from his individual funds, and never in any way recognized or treated as his own money, and was not, in fact, in any sense property of his estate. When he deposited it in bank as lodge money, and checked it out to the trustees, he did but return to the lodge that which already belonged to them.

From a careful examination of the evidence we are convinced that it clearly appears that payment to appellee was not made by the bankrupt, nor from the assets of his estate, and the court was justified in directing a verdict for the defendant.

In the course of the trial, appellant, upon appellee's objection, was denied the right to testify to a conversation had by him with the bankrupt's wife, and another with the bankrupt, at some unstated time after the payment to the lodge, and after the adjudication in bankruptcy and appointment of appellant as trustee, concerning a claim which

the wife would assert against the bankrupt's estate for the money advanced by her to the lodge. The conversation referred to took place long after the payment to the lodge was a completed incident. Neither the bankrupt nor his wife was a party to the suit. No grounds were laid for impeachment. The conversation is not pretended to be part of the *res gestae,* and the evidence at most hearsay, and properly excluded. For the same reasons, what was said and done between appellant and the bankrupt's wife in the presence of a third party with respect to the nature and settlement of her claim against the bankrupt's estate was rightly refused.

We find no error in the record. Judgment affirmed.