## THE KROGER COMPANY v. DAVID HAUN

[No. 2-576A189. Filed August 31, 1978. Rehearing denied October 16, 1978. Transfer dismissed January 10, 1979.]

404

*William M. Osborn, Thomas J. McKeon, Osborn & Hiner*, of Indianapolis, for appellant.

*Rex P. Killian, Ruckelshaus, Bobbitt & O'Connor*, of Indianapolis, for appellee.

SULLIVAN, J.—David Haun (Haun) recovered a judgment of $6,000 for personal injuries sustained at Kroger's warehouse. The following issues are presented for review:[1]

---

1. Our disposition of the issues obviates consideration of any claims with respect to procedural defects in Kroger's appeal.

(1) Was Haun contributorily negligent or did he incur the risk of his injuries as a matter of law?

(2) Did the trial court err in refusing to submit Kroger's instructions and in giving certain instructions of its own to the jury?

(3) Did the trial court err in permitting Haun to estimate loss of income relative to the issue of damages?

On March 5, 1974, Haun arrived at the Kroger warehouse to deliver a truckload of boxed groceries. Haun unloaded by hand, in the early morning hours, that portion of the shipment consisting of dry freight. He then moved his truck to the other end of the loading dock to finish the delivery of the cold storage goods. Haun discovered, after removing the cold storage items, that a few boxes of dry goods remained. A dispute then arose over whether Haun would again be required to move his truck to finish the delivery.

A Kroger foreman decided in the afternoon that Haun could unload the remaining boxes without moving his truck, but he would be required to stack them in a limited area on the dock. In accordance with Kroger's, warehouse procedure, Haun transferred the boxes by means of several fork-lift devices known as pallet jacks which were supplied by Kroger for delivery-dock use. Circumstances were such that Haun was required to drive the jack up a ramp inclined six to eight inches onto his truck. The fork-arms of the jack would then be placed under the wooden pallets constructed approximately six inches high and forty-two inches wide. Stacked upon each pallet were boxes of groceries weighing in total from 600 to 1000 pounds.

Haun would back the loaded fork-lift out of the truck onto the ramp and eventually to the dock, whereupon he would apply the brake, turn, and proceed forward to the limited area designated by Kroger.

Several jacks were made available by Kroger for delivery use. The jacks differed in that some had foot brakes while others had hand brakes. The hand-brake models employed a T-bar device which, when pulled downward, would engage the jack and, when released, would spring up automatically to apply the brake for a complete and sudden stop.

Haun had attempted to use four different jacks. Two of the first three he tried had weak batteries and could not pull the load. Haun was on

the fourth jack when, while reversing from the ramp onto the dock, he backed into the pallets he had previously stacked. He testified that the jack was a hand-brake model. When he hit the pallets, he released the T-bar and pushed upward, but the brake failed to stop the jack and, as a result, his foot was crushed under the pallets behind him. Haun testified that the jack had previously "faltered" and had been "messing up", but that it had never failed to come to a complete stop.

## I.

### Contributory Negligence and Incurred Risk

Kroger asserted at trial that Haun's conduct constituted contributory negligence and incurrence of the risk. Upon the verdict for plaintiff, the jury necessarily concluded that Kroger failed to carry its burden of proving one of these defenses. To this extent, Kroger is therefore appealing a negative judgment and may only succeed if the judgment is contrary to law. *Souerdike v. State* (1952), 231 Ind. 204, 108 N.E.2d 136; *Baker v. Fisher* (1972), 153 Ind.App. 581, 288 N.E.2d 263.

Incurred risk and contributory negligence are generally questions of fact for the jury, and the verdict should not be disturbed if evidence is conflicting or if reasonable minds could draw different inferences from the evidence. *Petroski v. Northern Indiana Pub. Service Co.* (1976) 171 Ind. App. 14, 354 N.E.2d 736.

It is undisputed, and Kroger does not contest, that it owed Haun, an invitee, a duty to use due care to maintain the premises and instrumentalities of the loading dock in reasonably safe condition. *See Hobby Shops, Inc. v. Drudy* (1974), 161 Ind.App. 699, 317 N.E.2d 473. Haun had a right to assume that Kroger would carry forth this duty unless and until he had reasonable notice to the contrary. *See Rouch v. Bisig* (1970), 147 Ind.App. 142, 258 N.E.2d 883.

Kroger initially contends that the collective malfunctioning of the jacks prior to the accident gave notice to Haun that Kroger had failed to maintain the machines properly. The jury could have found that the malfunctioning gave notice of the dangerous condition, but the jury did not do so. We cannot say as a matter of law that, under the circumstances herein presented, Haun acted

unreasonably to the extent that he was " 'ignoring a condition . . . openly fraught with peril to the person.' (citation omitted)". *Phillips v. Croy* (1977), 173 Ind.App. 401, 363 N.E.2d 1283, 1285; *see also Hi-Speed Auto Wash, Inc. v. Simeri* (1976), 169 Ind.App. 116, 346 N.E.2d 607.

In a somewhat related presentation, Kroger contends that, notwithstanding its own arguable negligence, it should not be held liable since Haun was contributorily negligent and incurred the risk of his injuries.

Contributory negligence has been defined as " 'the failure of a person to exercise for his own safety that degree of care and caution which an ordinary reasonable and prudent person in a similar situation would exercise.' (citation omitted)". *Memorial Hospital of South Bend, Inc. v. Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, 57; *see also Petroski v. Northern Indiana Pub. Service Co., supra,* 354 N.E.2d 736.

The doctrine of incurred risk[2] has been explained as follows:

"The doctrine of incurred risk is based upon the proposition that one incurs all the ordinary and normal risks of an act upon which he voluntarily enters, so long as those risks are known and understood by him, or could be readily discernible by a reasonable and prudent man under like or similar circumstances." *Stallings v. Dick* (1965), 139 Ind.App. 118, 210 N.E.2d 82, 88.

The relationship and application of the two doctrines have been sources of confusion and frustration among commentators and particularly among and between the courts of this state. It has been held repeatedly that in Indiana the two doctrines are separate and distinct. *See Indiana Natural Gas and Oil Co. v. O'Brien* (1903), 160 Ind. 266, 65 N.E. 918, on rehearing 66 N.E. 742; *Fruehauf Trailer Division v. Thornton* (1977), 174 Ind.App. 1, 366 N.E.2d 21; *Stallings v. Dick, supra,* 210 N.E.2d 82. Yet other decisions have stated that the doctrine of incurred risk is merely a "species of contributory negligence." *Rouch v. Bisig, supra,* 258 N.E.2d at 888; *see also Cleveland, C., C. & St. L. Ry. Co. v. Lynn* (1911),

---

2. We need not for purposes of this appeal deliberate upon the distinction between assumed risk and incurred risk. Suffice it to say that assumed risk differs, if at all, only in that it arises where there is contractual obligation. *See Coleman v. DeMoss* (1969), 144 Ind.App. 408, 246 N.E.2d 483.

177 Ind. 311, 95 N.E. 577; *Emhardt v. Perry Stadium, Inc.* (1943), 113 Ind.App. 197, 46 N.E.2d 704.

We deem it appropriate and necessary here to attempt to reconcile the incongruity of these decisions and to hopefully clarify and develop a consistency in the use and application of the defenses.

Various dissimilarities have been put forth by authorities to distinguish the two doctrines. A few include:

(1)  Incurred risk demands a subjective analysis with inquiry into the particular actor's knowledge and voluntary acceptance of the risk. Contributory negligence contemplates an objective standard for the determination whether a reasonable man would have so acted under similar circumstances. *See Fruehauf Trailer Division v. Thornton, supra,* 366 N.E.2d at 29; *Morris v. Cleveland Hockey Club, Inc.* (1952), 157 Ohio St. 225, 105 N.E.2d 419.

(2)  Incurred risk is concerned with the perception and voluntariness of a risk and is blind as to the reasonableness of risk acceptance. Contributory negligence is concerned with whether the acceptance of the risk was reasonable and justified in light of the possible benefit versus the degree of danger. *See Halepeska v. Callihan Interests, Inc.* (Texas 1963), 371 S.W.2d 368.

(3)  Incurred risk involves a mental state of "venturousness" while contributory negligence, under some definitions, describes conduct which is "careless". *See Pittsburgh C., C. & St. L. Ry. Co. v. Hoffman* (1914), 57 Ind.App. 431, 107 N.E. 315; *Weber v. Eaton* (D.C. Cir. 1947), 160 F.2d 577.

(4)  While incurred risk, in one sense of the concept, has been described as negating a duty and therefore precluding negligence, contributory negligence always presupposes a duty and breach thereof, but serves as an affirmative defense to prevent recovery by plaintiff. *See Gordon v. Maryland State Fair, Inc.* (1938), 174 Md. 466, 199 A. 519.

The confusion in distinguishing the two defenses under Indiana law has been due in large part to two factors. First, there has been an infusion of the objective "reasonable man" test into the incurred risk concept. Secondly, courts have erroneously applied the requirement of

knowledge and appreciation of a peril for the finding of contributory negligence.

The Indiana definition of incurred risk includes the proposition that knowledge of a risk may be imputed where such a risk would have been "readily discernible by a reasonable and prudent man under like or similar circumstances." *Stallings v. Dick, supra,* 210 N.E.2d at 88; *see also Sullivan v. Baylor* (1975) 163 Ind.App. 600, 325 N.E.2d 475; *Meadowlark Farms, Inc. v. Warken* (1978), 176 Ind.App. 437, 376 N.E.2d 122 (assumption of risk). We are of the belief that to hold that one may voluntarily incur a risk of which he had no actual knowledge, yet was required to know in the exercise of ordinary care, is a perversion of the doctrine. Failure to recognize a danger or risk may constitute unreasonable conduct and, therefore, contributory negligence, but it should never be considered a voluntary incurrence of a known risk.

In *Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, 261 N.E.2d 305, 312, the court stated:

"[W]hether a user has assumed the risk of using a product known to be dangerously defective is fundamentally a subjective test, in the sense that it is *his* knowledge, understanding and appreciation of the danger which must be assessed, rather than that of the reasonably prudent person (Restatement (Second) of Torts, § 496D, comment (c)), it must also be remembered that this is ordinarily a question to be determined by the jury. That determination is not to be made solely on the basis of the user's own statements but rather upon the jury's assessment of all of the facts established by the evidence. No juror is compelled by the subjective nature of this test to accept a user's testimony that he was unaware of the danger, if, in the light of all of the evidence, he could not have been unaware of the hazard (Restatement (Second) of Torts, § 496D, comments (d) and (e)); and the factors of the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses, (Wade, Strict Tort Liability of Manufacturers, 19 Sw.L.J. 5 (1965), see *Pitts v. Basile*, 35 Ill.2d 49, 219 N.E.2d 472) will all be relevant to the jury's determination of the issue, if raised." (Original emphasis)

The same sentiment was expressed in *Bohnsack v. Driftminer* (1952), 243 Iowa 383, 52 N.W.2d 79, 84:

"Mere lack of care, without more, does not amount to assumption of risk. The doctrine involves a choice known to be dangerous and one that is not . . . . It cannot logically be held that one has deliberately chosen a dangerous course of which he is ignorant merely because he should have known of it."

See also Vargo, *Products Liability in Indiana—In Search of a Standard for Strict Liability in Tort*, 10 Ind.L.Rev. 871, 893 (1977).

Some commentators and authorities have expressed the contrary view, however, preferring to find constructive knowledge of a risk under certain circumstances. *See* James, *Assumptions of Risk*, 61 Yale L.J. 141, 148 (1952). In *Schiller v. Rice* (1952), 151 Tex. 116, 246 S.W.2d 607, the jury found that, although plaintiff knew and appreciated the fact that the driver of the car she chose to ride in was drunk, she nevertheless did not appreciate the risk inherent in riding with a drunk driver. The appellate court affirmed the finding that plaintiff had incurred the risk on the basis that certain dangers may be so obvious that knowledge thereof may be imputed as a matter of law. It is our conclusion, however, that the integrity of each doctrine is better preserved when such situations are treated as unreasonable conduct in failing to recognize an obvious risk or danger, therefore constituting contributory negligence. *See Hutchinson v. Mitchell* (1957), 143 W. Va. 280, 101 S.E.2d 73; *see also* W. Prosser, *Handbook of the Law of Torts* 424 (4th Ed. 1971).

Courts have also cited, as a matter of course, the proposition that knowledge and appreciation of peril are essential elements for contributory negligence. This statement is misleading and has been erroneously applied.

The proposition apparently originated in *Riesbeck Drug Co. v. Wray* (1942), 111 Ind.App. 467, 39 N.E.2d 776. That case dealt with the question of whether an eight-year-old child could understand the dangerous nature of a bottle of carbolic acid. The court cited only 38 Am.Jur., Negligence § 201 as a source. Reference to that authority reveals that the cited section deals with the existence of extenuating circumstances — age, illiteracy, mental incompetency — which call for special consideration in applying the standard "reasonable man" test. The court in *Riesbeck* clearly limited its holding to such situations when it stated:

"Although in the case of adults it has been deemed impracticable

and unwise to determine contributory negligence on the basis of whether the party was mentally acute or inclined to be dull or slow-witted, although not mentally deficient, a person who is so absolutely devoid of intelligence as to be unable to apprehend apparent danger and to avoid exposure to it cannot be said to be guilty of negligence. Knowledge and appreciation of peril are essential elements of contributory negligence, and evidence is admissible to show a plaintiff's mental condition to aid the jury in determining whether he understood and appreciated the danger." 39 N.E.2d at 779.

The requirement, however, appeared to have been misapplied in *Rouch v. Bisig, supra,* 258 N.E.2d 883. There the court dealt with a situation in which a 15-year-old boy had dived off a pier under dangerous circumstances. The court restated the requirement that to be contributorily negligent, one must have knowledge and appreciation of the risk. 258 N.E.2d at 888. While it was unclear as to whether the boy's age was a factor in applying the requirement, the court nevertheless did not expressly limit the knowledge requirement to special circumstances which would call for modification of the reasonable man test as in *Riesbeck, supra.* On the contrary, it merely noted that the boy "testified that he did not consider it perilous when he dove." 258 N.E.2d at 888.

The ambiguity of the *Rouch* decision was apparently remedied, however, in *Burger v. National Brands, Inc., Featherlite Mfg. Div.* (1976), 168 Ind.App. 289, 342 N.E.2d 870. There plaintiff-appellant attempted to extend the knowledge requirement to situations requiring application of the standard "reasonable man" test. The court correctly limited its application with the following response:

"Burger, nevertheless, attempts to avoid this conclusion by two assertions. First, he urges that on the basis of our holding in *Rouch v. Bisig* (1970), 147 Ind.App. 142, 258 N.E.2d 883, there existed a question of Burger's knowledge and appreciation of the peril which required the question of contributory negligence to be submitted to the jury. Burger fails to recognize the distinguishing feature present in *Rouch*. In that case, the plaintiff was an injured boy. The appropriate standard to determine negligence was reasonable care of a youth of like age, intelligence and experience. The determination of the application of those factors to determine what constituted reasonable care presented a question for the jury." 342 N.E.2d at 873.

The knowledge requirement was, nevertheless, though perhaps inadvertently, extended to situations involving adult plaintiffs in *Hi-Speed Auto Wash, Inc. v. Simeri, supra,* 346 N.E.2d 607. There the court held that evidence supported the finding that plaintiff, an adult, did not have actual knowledge of the danger that a car-wash attendant would slam an open car-door on plaintiff's finger. The decision can and should be distinguished on the basis that defendant asserted contributory negligence only under the theory that plaintiff's knowledge of the danger was equal to or greater than defendant's. However, this case is somewhat disquieting in that while it acknowledged that defendant could be charged with actual *or constructive* knowledge of the peril, it failed to either state or apply the same standard for plaintiff. 346 N.E.2d at 609 (See Hoffman, J., dissenting). Contributory negligence is determined and governed by the same test and rules as defendant's negligence. *Layman v. Hall Omar Baking Co.* (1966), 138 Ind.App. 673, 215 N.E.2d 692.

We believe the actual state of the law to be, absent extenuating circumstances such as age or mental incompetency, that contributory negligence may be found either where plaintiff has actual knowledge of the danger, or, in the exercise of reasonable care, should have appreciated or anticipated the danger.

In *Frankfort v. Owens* (1976), 171 Ind.App. 566, 358 N.E.2d 184, 195, the court quoted *Devine v. Grace Construction and Supply Company* (1962), 243 Ind. 98, 181 N.E.2d 862, 868, with respect to contributory negligence:

> "Generally, 'it is negligence to fail to see or hear that which you could see or hear, by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear.' *Pfisterer v. Key, supra* (1941), 218 Ind. 521, 529, 530, 33 N.E.2d 330, 333. See also: *Bellefontaine Railway Company v. Hunter, Administrator* (1870), 33 Ind. 335, 360, 5 Am.Rep. 201."

The appropriate rule was also stated in *Hunsberger v. Wyman* (1966), 247 Ind. 369, 216 N.E.2d 345, 348:

> "In order for an act or an omission to constitute negligence, a person to be charged must have knowledge or notice that such act or omission involved danger to another.

'The foundation of liability is knowledge, or what is deemed in law to be the same thing, namely, the opportunity by the exercise of reasonable diligence to acquire knowledge of peril. * * *' 21 I.L.E. Negligence § 4, p. 266.

See also *Nisbet v. Van Tuyl* (7 Cir., 1957), 241 F.2d 874.

Where there is no knowledge, actual or constructive, of danger or peril on the part of a defendant, he cannot be charged with negligence. *Kennedy v. Southern Fire Brick and Clay Company, Inc.* (1927), 86 Ind.App. 629, 159 N.E. 1.

In addition, a plaintiff must have exercised reasonable care for his own safety.

'A person who knows and appreciates, *or in the exercise of ordinary care should have known and appreciated,* the existence of danger from which injury might reasonably be anticipated must exercise ordinary care to avoid injury, and a person who by his voluntary acts or omissions exposes himself to danger of which he has actual or imputed knowledge may be guilty of contributory negligence.' 21 I.L.E. Negligence, § 84, p. 340; *City of Evansville v. Blue* (1937), 212 Ind. 130, 8 N.E.2d 224" (Emphasis supplied).

*See also Memorial Hospital of South Bend, Inc. v. Scott, supra,* 300 N.E.2d 50; *Alexandria Mining and Exploring Co. v. Painter* (1891), 1 Ind.App. 587, 28 N.E. 113.

A careful segregation of the particular determinative elements of each doctrine facilitates their understanding and application. Much confusion in this area has been caused by the usage of similar terms to describe different factual situations. An analysis of the various possibilities concerning the conduct of a plaintiff suing in a negligence action will hopefully provide clarification.

Under every conceivable circumstance in which the conduct of plaintiff is in question, the following components will be present:

(1)    the existence or non-existence of a duty owed by the defendant to plaintiff for the prevention of the danger in question;

(2)    the voluntariness of plaintiff's conduct and his knowledge and appreciation of its possible consequences, or lack thereof, and

(3) the reasonableness of the risk entailed or conduct engaged in by the plaintiff.

The first level of analysis necessitates the determination whether the risk or danger in question falls within the ambit of a duty owed by the defendant to plaintiff. Where defendant's duty does not include protection from the risk, either because of express or implied consent, *see* Restatement (Second) of Torts §§ 496 B and 496 C (1965), plaintiff's conscious, voluntary incurrence of the risk will be in the "primary" sense. *See* James, *supra*, 61 Yale L.J. 141; Prosser, *supra* at 440.[3] The risk may or may not be unreasonable; the determination of its reasonableness, however, is irrelevant because contributory negligence presupposes the existence of a duty by defendant and breach thereof. Where the defendant owes no duty or has not breached an existent duty, the question of contributory negligence is extraneous and not reached.

An excellent illustration of "primary" incurrence of a risk is presented in *Emhardt v. Perry Stadium, Inc., supra*, 46 N.E.2d 704. There plaintiff was injured when another spectator threw back a baseball which had been fouled off into the stands. The court held that the plaintiff had incurred the risk of such a danger which, according to the court, was "an ordinary hazard of the game." 46 N.E.2d at 706. The court appears to have treated the incurred risk in the nature of an affirmative defense to defendant's negligence, noting that "in some of the more recent cases it has been called part of the doctrine of contributory negligence." 46 N.E.2d at 706. The proper analysis, however, woud have entailed a recognition that the defendant was simply not negligent since he owed no duty to protect plaintiff from the "ordinary hazards" of watching a game.[4] Whether this type situation is termed "primary" incurrence of a risk or is treated under a "no-duty" concept, the same elements are present and should be so recognized.

---

3. This situation has also been described as the *volenti non fit injuria* doctrine, *see* James, *supra* at 141, and as the "no-duty" concept. *See Halepeska v. Callihan Interests, Inc., supra*, 371 S.W.2d 368.

4. The determination whether plaintiff's incurrence of the risk negates a duty on the part of the defendant or merely serves as a defense to a breach of defendant's duty may become important as to burden of proof or where the defense of assumption of risk has been abolished. *See* Restatement (Second) of Torts, § 496C, comment (d).

Where the defendant is charged with a duty to guard against the risk of danger in question, failure to do so is a breach of that duty and constitutes negligence. The defendant may nevertheless avoid liability notwithstanding his negligence where: (1) the plaintiff comes upon a risk or danger caused by defendant's negligence, knows of and appreciates its magnitude, but nevertheless accepts it voluntarily; or (2) the plaintiff's conduct fails to conform to that of a reasonable person's under similar circumstances. In the former situation, plaintiff would have incurred the risk in the "secondary" sense, while in the latter, plaintiff would be contributorily negligent. Both could be asserted by the defendant as affirmative defenses.

It is important to note that plaintiff's conduct may be voluntary, knowing or unreasonable, *or any combination thereof.* As stated in *Petroski v. Northern Indiana Pub. Service Co., supra,* 345 N.E.2d 736, 745:

> "There are factual situations when conduct may be characterized as either contributory negligence or incurred risk. For example, in those cases when the plaintiff voluntarily encounters a known *reasonable* risk exercising unusual care for his safety, there may be no contributory negligence on his part, but his conduct may still be characterized as incurral of the risk. However, in those cases where the plaintiff voluntarily encounters a known *unreasonable* risk which no reasonable and prudent person in a similar situation would encounter, his conduct could be described as either incurral of the risk or contributory negligence. See William L. Prosser, Handbook of the Law of Torts § 68, at 440-41 (4th ed. 1971)." (Original emphasis).

Thus, where plaintiff's conduct has been voluntary and knowing as well as unreasonable, courts and commentators have observed that the two defenses overlap and are sometimes virtually indistinguishable. *See Petroski v. Northern Indiana Pub. Service Co., supra,* 354 N.E.2d 736; *Rouch v. Bisig, supra,* 258 N.E.2d 883; *Emhardt v. Perry Stadium, Inc., supra,* 46 N.E.2d 704; *see also* Prosser, *supra* at 456; Restatement (Second) of Torts § 466, comment (d). Some courts, however, have been perplexed by the very proposition that conduct may be both voluntary and knowing on one hand and negligent in the sense of carelessness on the other. *See Indiana Natural Gas and Oil Co. v. O'Brien, supra,* 65 N.E. 918, 66 N.E. 742; *Pierce v.*

*Clemens* (1943), 113 Ind.App. 65, 46 N.E.2d 836; *Pittsburgh C., C. and St. L. Ry. Co. v. Hoffman, supra,* 107 N.E. 315.

The court in *O'Brien* stated:

"In order, however, that the principle to which we have referred may operate or be applicable to cases of the class of the one under review, it must appear that the injured person had knowledge of the danger in question, and appreciated it, and voluntarily, or of his own choice, exposed himself to or encountered such danger, thereby incurring, or taking upon himself, the risk incident thereto. See authorities above cited. Where a person has knowledge of and fully appreciates a danger, and under such circumstances, without any special exigency compelling him, he exposes himself to such danger or peril, his act in the premises may be deemed to have been voluntary. *Contributory negligence in such a case cannot properly be said to be an element therein, for certainly the voluntary act of a party in exposing himself to a known and appreciated danger is wholly incompatible with an act of negligence or carelessness, for it must be manifest that carelessness in regard to a matter is not the same as the exercise of a deliberate choice in respect thereto.* Freedom of the will, in fact, is the thing emphasized by the principle asserted in the maxim *volenti non fit injuria.* It certainly must be true that, in an act where design is shown, the imprudence or negligence of the actor is wholly immaterial as a feature therein." 65 N.E. at 920. (Emphasis supplied).

It appears almost elementary to most authorities, however, that contributory negligence may include intentional and knowing incurrence of a danger. Prosser, *supra,* states at 424:

"Contributory negligence may consist not only in a failure to discover or appreciate a risk which would be apparent to a reasonable man, or an inadvertent mistake in dealing with it, but also an intentional exposure to a danger of which plaintiff is aware."

The Restatement (Second) of Torts, § 466 states:

"The plaintiff's contributory negligence may be either (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, * * * ."

The incongruity of the two lines of authority is due to respective reliance on two definitions of contributory negligence, one narrow and

the other broad in scope. The definition of contributory negligence as contemplated by those cases typified by the *O'Brien* decision includes only the concept of simple negligence in the sense of carelessness. The modern view, embodied in the Restatement (Second), emphasizes the unreasonableness of a plaintiff's conduct, and thus includes within its definition any intentional exposure to a risk which falls below that standard of care to be expected from a reasonable person. As stated in 57 Am.Jur.2d § 318, p. 720 (1971): "The essence of contributory negligence is carelessness; it may or may not imply intentional exposure to a known danger."

With the difference between the two definitions in mind, it becomes clear why some courts have deemed incurred risk to be merely a "species" of contributory negligence while others have demanded that the defenses be kept separate and distinct. The importance of reconciling the two definitions becomes apparent only in those situations where incurred risk serves as a defense while contributory negligence does not. *See* Vargo, *Products Liability, 1975 Survey of Recent Developments in Indiana Law*, 9 Ind.L.Rev. 270, 279, n. 48 (1975). In a negligence action, both defenses are available to a defendant, and failure to distinguish between the two is without substantive significance. Where, however, only incurred risk is available as a defense, as in guest statute cases, *see Ridgway v. Yenny* (1944), 223 Ind. 16, 57 N.E.2d 851; *Collins v. Grabler* (1970), 147 Ind.App. 584, 263 N.E.2d 201; *Pierce v. Clemens, supra,* 46 N.E.2d 836, and strict tort liability cases, *see Fruehauf Trailer Division v. Thornton, supra,* 366 N.E.2d 21; *Gregory v. White Truck and Equipment Co.* (1974), 163 Ind.App. 240, 323 N.E.2d 280; *Cornette v. Searjeant Metal Products, Inc.* (1970), 147 Ind.App. 46, 258 N.E.2d 652, courts have become quagmired in the dilemma presented by the Restatement (Second) definition of contributory negligence. If incurred risk is a "type" of contributory negligence, then either: (1) incurred risk cannot be a defense to such actions since contributory negligence is not, or (2) contributory negligence is a defense since incurred risk is. *See Collins v. Grabler, supra,* 263 N.E.2d 201, 208 (Sullivan, J., dissenting).

Professor James correctly noted the importance of making such a distinction when he stated:

"Where defendant's conduct is wilful or wanton, or entails strict liability, ordinary contributory negligence is not a defense, but the deliberate and voluntary assumption of an unreasonable risk may be. *See,* e.g., Restatement (Second) of Torts § 402A, comment n, § 496A, comment d (1965): W. Prosser, Handbook of the Law of Torts 454, 455 (3d ed. 1964) [hereinafter cited as Prosser, Torts — the edition will be noted]. *In such a situation there will be need to distinguish what may be called the unreasonable assumptions of risk from ordinary contributory negligence.*" James, *Assumption of Risk: Unhappy Reincarnation,* 78 Yale L.J. 185, n. 4 (1968). (Emphasis supplied).

The uninviting consequences of this dilemma can only be avoided when situations providing for incurred risk but not contributory negligence as a defense are analyzed as follows. While contributory negligence (unreasonable conduct) is *not* a defense in such cases, it may nevertheless be present in the form of conduct which includes the additional elements of voluntary and knowing incurrence. This is, in effect, the "overlap". In such situations, the mere presence of unreasonable conduct, and therefore contributory negligence, does not preclude plaintiff from recovery, but neither does it prevent the defendant from asserting the incurred risk elements of the conduct. The "unreasonableness" of the conduct is not determinative in such actions. *See* 57 Am.Jur.2d § 319, p. 722 (1971).

We thus proceed to consider the case at bar in light of the foregoing principles.

Kroger contends that Haun subjected himself to a risk consisting of a combination of factors, including Haun's knowledge of the congested area, his failure to look to the rear while backing down the ramp, and his knowledge of the prior malfunctioning of the fourth jack.

However, the evidence adduced at trial does not as a matter of law mandate the finding that Haun either incurred the risk of his injuries or was contributorily negligent. First, there is a factual question as to the voluntariness of Haun's conduct. Kroger was responsible for requiring Haun to unload the pallets in the limited area. There is also evidence which would support the finding that Haun's failure to look behind him was not only reasonable but necessary in order to prevent the jack from overrunning the ramp. Furthermore, while there may have been other

jacks available, Haun had tried three jacks which had malfunctioned before he used the fourth one. Such conduct is at least indicative of a good-faith effort to obtain properly-working equipment and is dissuasive of predisposition towards careless or voluntary use of a dangerous or defective machine.

Haun's knowledge and appreciation of the risk are also disputable. While his testimony concerning the degree of prior malfunctioning of the jack is at best imprecise, it would nevertheless support a finding that the jack had previously only faltered or hesitated, but never failed to stop. Haun further testified that he often experienced such reactions from jacks when they became "hot". We cannot say as a matter of law that, under such circumstances as framed by the evidence, "dangers incident to the proposed operation were so glaring" as to constitute a voluntary incurrence of a known and appreciated risk. *See Sullivan v. Baylor, supra*, 325 N.E.2d at 478.

Kroger bases its contention that Haun was contributorily negligent to two distinct theories:

(1)   Under the "equal knowledge" doctrine, it is claimed that if Kroger was negligent, then Haun necessarily was negligent since Haun's knowledge of the peril equalled or surpassed that of Kroger's. *See Hi-Speed Auto Wash, Inc. v. Simeri, supra*, 346 N.E.2d 607; *Dreibelbis v. Bennett* (1974), 162 Ind.App. 414, 319 N.E.2d 634.

(2)   Under the classic defense of contributory negligence, notwithstanding Kroger's negligence, it is contended that Haun failed to act as would a reasonable person under similar circumstances. *See Phillips v. Croy, supra*, 363 N.E.2d 1283.

With respect to the "equal knowledge" contention, we note that the application of this doctrine apparently has been limited by recent decisions to those instances in which (1) both plaintiff and defendant were "active" participants in the injury-causing conduct, *see Dreibelbis v. Bennett, supra*, 319 N.E.2d 634, and (2) plaintiff could no longer assume that defendant would exercise his duty of reasonable care. *See Phillips v. Croy, supra*, 363 N.E.2d 1283; *Hi-Speed Auto Wash, Inc. v. Simeri, supra*, 346 N.E.2d 607.

The situation at hand fails to qualify under either condition. Haun

had a right to expect that Kroger would maintain properly-functioning equipment for his use until sufficient notice to the contrary was received. As earlier noted, the jury could reasonably have found, in light of the evidence presented, that the degree of prior malfunctioning of the jack did not give notice that Kroger had failed to exercise reasonable care in its maintenance. Accordingly, the evidence of record does not mandate a finding of "equal knowledge".

Nor can we say as a matter of law, with respect to Kroger's second contention, that Haun failed to act as would a reasonable man under the classic definition of contributory negligence. With factual disputes resolved in favor of Haun, the evidence would have allowed the jury to find the following. Haun was required by Kroger to load in a congested area. His failure to look behind him while reversing from the ramp was necessary to prevent the load from falling. After having tried three jacks which would not function properly, Haun used a fourth jack which had a tendency to hesitate and falter, but which had never failed to stop. Such reactions sometimes occur when jacks overheat from use.

Under the foregoing circumstances, we cannot say, as a matter of law, that Haun acted unreasonably in failing to perceive the risk of his injuries or in the manner in which he conducted himself.

## II.

### INSTRUCTIONS

Kroger argues that the trial court committed reversible error in its instructions to the jury.

Kroger first contends that Instruction Nos. 1, 4, and 20 were mandatory and were improper because they failed to include all essential elements for plaintiff's recovery.

Instruction No. 1 reads:

"This is an action to recover for injuries to the plaintiff's person allegedly caused by the negligence of the defendant's agent or employee.

"In such cases, before the plaintiff can recover against the defendant, he must prove by a preponderance of the evidence:

"1. That the injuries of which he complains in his complaint or some of them were suffered.

"2. That the defendant's agent or employee was guilty of the acts or omissions charged as negligence in the complaint, or one of them.

"3. That such acts or omissions or the defendant's agent or employee were negligent and were the proximate cause of the injuries to the plaintiff. If the plaintiff has proven by a preponderance of the evidence all of the foregoing propositions, he would be entitled to recover."

It is argued that the phrase "would be entitled to recover" renders the instruction mandatory. The identical phrase, however, was held to be non-mandatory in *David Johnson Co., Inc. v. Basile* (1964), 136 Ind.App. 611, 199 N.E.2d 478. The phrase merely expresses a possibility or contingency of recovery and does not command a finding for or against plaintiff. The elements of contributory negligence and incurred risk were properly covered under the trial court's Instructions Nos. 2, 5, 13, 14, 14A and 20. The applicable law need not be incorporated in one instruction. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797.

Instructions Nos. 4 and 20 read:

Instruction No. 4

"The negligence charged in the complaint is not to be presumed from the happenings of the accident in question and the consequent personal injuries to the plaintiff as a result thereof, but it must be proven, and in order to recover, the evidence must be sufficient to establish by a fair preponderance that the negligence causing the injury complained of was the proximate cause of the plaintiff's injuries."

Instruction No. 20

"Just because the Court has given you certain instructions indicating those factors which you may use in determining damages does not mean that you have to award damages. Such instructions are given only for the purpose of aiding you in determining damages if you have first found that the plaintiff has proved one or more of the allegations of negligence in the complaint by a preponderance of the evidence; that such negligence proximately caused or contributed to cause the injuries alleged; and if you further find from

all of the evidence that the plaintiff was free from any contributory negligence."

Kroger argues that these instructions are also mandatory. Both instructions, however, merely state propositions of law and do not attempt to set forth specific facts such that the jury is required to reach a certain result upon a finding of those facts. The court in *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923, 925, stated:

> "Instructions which are mandatory in character, which attempt to set up a factual situation directing the jury to a certain result, are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation, as for example telling the jury that if contributory negligence exists the plaintiff is not entitled to recover. In the latter case the court is merely stating propositions of law not based upon a detailed factual situation. In order to properly instruct a jury it is necessary that the court state general propositions of law and their application to the case. Instruction No. 5 before us does not set up a detailed factual situation and then instruct the jury they must come to a certain result either for or against the plaintiff. Instruction No. 5 in fact attempts to state a proposition of law which is applicable when contributory negligence appears in the picture. This instruction has the general characteristics of ordinary instructions given by the court based upon legal principles. In our opinion this instruction is not to be condemned on the ground that it falls within the category known as mandatory instructions which attempt to set out detailed factual situations."

The instructions are therefore non-mandatory. *See also Board of Com'rs of Delaware County v. Briggs* (1975), 167 Ind.App. 96, 337 N.E.2d 852; *Johnson v. Mills* (1973), 157 Ind.App. 620, 301 N.E.2d 205.

Kroger's contention that the trial court's Instruction No. 14 is one-sided is also without merit. While a statement concerning plaintiff's duty of due care and defendant's right to expect the observance thereof was not included, the instruction was non-mandatory and the omitted subject matter was amply covered in other instructions. Non-mandatory instructions should be construed and considered as a whole in determining whether they correctly and sufficiently state the law. *LaNoux v. Hagar* (1974), 159 Ind.App. 646, 308 N.E.2d 873.

The propositions stated in Kroger's tendered instructions were suf-

ficiently covered by other instructions given. No error was committed in refusing them. *Frankfort v. Owens, supra,* 358 N.E.2d 184; *Hill v. Jennings* (1971), 149 Ind.App. 241, 271 N.E.2d 473.

## III.

### *ESTIMATION OF LOSS OF INCOME*

Kroger contends that the trial court erred in allowing Haun to estimate his loss of income with respect to the issue of damages. Haun testified that he had grossed $1,880.70 during the two weeks he had leased his truck prior to the accident. When asked whether he knew his expenses for that period, Haun replied that he could not determine his expenses until the end of each year since many were incurred on a one-time basis. Haun further testified that he usually left the determination of expenses and depreciation to his tax man. Haun was, however, able to estimate his average net income at about two to three hundred dollars per week.

Evidence of loss of profit in Indiana is not open to objection for uncertainty when there is testimony which, while not sufficient to put the amount beyond doubt, is sufficient to enable the jury to make a fair and reasonable finding. *Jerry Alderman Ford Sales, Inc. v. Bailey* (1972), 154 Ind.App. 632, 291 N.E.2d 92.

Less certainty is required to prove the amount of loss than is required to prove the fact that profits were in truth lost. *Jerry Alderman Ford Sales, Inc. v. Bailey, supra,* 291 N.E.2d at 106. Furthermore, it has been held elsewhere that plaintiff's own reasonable testimony concerning lost profit will suffice. *Power Equipment Co. v. Fulton* (1973), 32 Colo.App. 430, 513 P.2d 234; *Jordan v. Travelers Insurance Co.* (La.App. 1970), 231 So.2d 678; *Clouatre v. Toye Brothers Yellow Cab Co.* (La.App. 1966), 193 So.2d 344.

The court in *Jerry Alderman Ford Sales, Inc. v. Bailey, supra,* 291 N.E.2d 92, quoted 22 Am.Jur. Damages § 172:

" ' * * * it must be borne in mind that prospective profits are to some extent uncertain and problematical, and so, on that account or on account of the difficulties in the way of proof, a person complaining of breach of contract is not deprived of all remedy; uncer-

tainty merely as to the amount of profits that would have been made does not prevent a recovery.'" 291 N.E.2d at 106.

As further stated in *American Fletcher National Bank v. Flick* (1969) 146 Ind.App. 122, 252 N.E.2d 839, 847:

"' When it is found that a harm has been caused and the only uncertainty is as to the dollar value of the harm, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever [citations omitted]. *However, there must be some evidence on which to base an award of substantial damages.'"* (Original emphasis)

In the case at hand, the jury was not without guidelines for the determination of lost profits. Haun's estimate of net income was framed by the undisputed and concrete figure of his gross income. The estimate, therefore, did not constitute complete conjecture or guesswork.

We find there was sufficient evidence upon which the jury could base the award of damages.

The judgment is affirmed.

Buchanan, C.J. and

Shields, J., concur.

NOTE—Reported at 379 N.E.2d 1004.